NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0242n.06

No. 14-1659

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FRANK CHRISTOPHER,

    Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

    Respondent-Appellee.

FILED
Apr 03, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

CLAY, Circuit Judge. Defendant Frank Christopher appeals the district court's denial of his petition to vacate or set aside his conviction pursuant to 28 U.S.C. § 2255. Christopher was convicted of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), and he was sentenced to a term of 120 months of imprisonment. We **REVERSE** and **REMAND** for the reasons set forth below.

BACKGROUND

On April 21, 2009, Christopher was charged with one count of conspiracy to possess with intent to distribute, and distribution of cocaine. The government's case against Christopher was strong—it included the testimony of a coconspirator, as well as ten recorded phone conversations where Christopher is heard negotiating purchases of cocaine for distribution. The government offered Christopher a Rule 11 plea agreement that would dramatically decrease his sentencing

guidelines range relative to the 151 to 181 months of imprisonment he was facing if he were to go to trial; he would face only between 30 to 37 months pursuant to the plea agreement. Other defendants charged in the conspiracy with Christopher were offered and accepted similar deals. Christopher's attorney indicated that he had discussed the deal with Christopher, but Christopher was not interested and wished to proceed to trial. In 2011, Christopher was convicted and sentenced to the mandatory minimum of 10 years of imprisonment.

Christopher claims that he did not directly appeal his conviction based on the advice of his trial attorney. In January of 2012, Christopher wrote the court asking that his case be reviewed because his "lawyer failed to properly advise [him] about taking [the] deal that was offered or going to trial due to his cocaine abuse." (R. 2308, 2255 Ltr., PageID # 16368). It had only just dawned on Christopher "that being represented by a fellow cocaine abuser may not have been in [his] best interest." (*Id.*) Christopher alleged that he "[had] done cocaine with [his attorney] at least 20 times," including while reviewing discovery materials. (*Id.*) The court construed Christopher's letter as a motion to vacate or set aside the judgment pursuant to 28 U.S.C. § 2255.

Christopher was appointed counsel, and supplemental briefing was filed on January 9, 2014. He confirmed (in a declaration made under penalty of perjury) the allegations made in his letter. He also explained that he had known his attorney personally for nearly thirty years and offered additional details respecting their joint cocaine usage during the pendency of his case. Christopher alleged that during the representation "he delivered cocaine to [his attorney] on approximately twelve occasions, always in an amount of two grams." On one occasion, he alleged, his attorney directed him to search for his name among a stack of discovery materials while they both were high on cocaine. That is the only time, according to Christopher,

that they reviewed the evidence—he did "not receive a copy of any discovery . . . and did not hear any" of the incriminating phone calls prior to his trial. (R. 2530-1, Decl., PageID # 18601) The only advice allegedly offered by Christopher's attorney was that "the government's case was weak and [that] conspiracy was difficult to prove." (*Id.*) On that basis alone, Christopher asserted, he rejected the plea deal, which he would have otherwise accepted had he known the strength of the government's case against him.

The government asserted below that Christopher would not have pleaded guilty, inasmuch as he protested his innocence throughout trial, and for that reason, he was not entitled to any relief. The government also asserted that Christopher's allegations did not amount to a claim for ineffective assistance of counsel, and that the allegations were unbelievable because they were contradicted by the record. The district court adopted without qualification the reasoning provided in the government's brief and denied Christopher's motion. This appeal followed.

## DISCUSSION

The district court's denial of a § 2255 motion to vacate or set aside a judgment is reviewed *de novo* where, as here, the district court has made no findings of fact. *See Jenkins v. United States*, 394 F.3d 407, 410 (6th Cir. 2005). Pursuant to § 2255, a federal prisoner may seek relief from the imposition of a sentence if he has suffered prejudice as the result of an error of constitutional magnitude. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). Ineffective assistance of counsel claims are an appropriate basis for relief under § 2255. *See United States v. Caver*, 470 F.3d 220, 250 (6th Cir. 2006). Whether an attorney's assistance is constitutionally deficient is a mixed question of law and fact. *United States v. Jackson*, 181 F.3d

740, 744 (6th Cir. 1999). Thus, this Court also reviews *de novo* the legal aspect of an ineffective assistance of counsel claim. *Id.*

Ineffective assistance of counsel claims are typically governed by *Strickland v. Washington*, where a petitioner must demonstrate (1) that the attorney's performance was constitutionally deficient, and (2) that he was prejudiced by this deficiency. 466 U.S. 668, 687 (1984).[1] The second prong is satisfied only if there exists a reasonable probability that the trial's outcome would have differed but for the attorney's error. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003). The *Strickland* test also applies in the plea-bargaining context, where it is naturally less burdensome to prove prejudice, because the petitioner "need only show a reasonable probability that he would have pleaded differently." *Griffin*, 330 F.3d at 737.

"A claim of ineffective assistance can hinge on one allegation or, as here, the cumulative effect of several." *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994). Christopher has alleged sufficient facts to support, if true, a finding that he received ineffective assistance. On its own, drug usage may "be a significant factor when determining the [in]adequacy of [the] representation." *Id.* at 740. Actual conflicts of interest also provide cause to find ineffective assistance of counsel. *See Moss v. United States*, 323 F.3d 445 (6th Cir. 2003). The alleged supplier-client relationship in this case suggests the possibility of an actual conflict of interest on the theory that, were Christopher to cooperate with the government and divulge information about his cocaine distribution, Christopher's attorney would be at risk of the government discovering his own illegal drug use. *See Rugiero v. United States*, 330 F. Supp. 2d 900, 907 (E.D. Mich. 2004) ("It is the existence of this undeniable uncertainty regarding [the attorney's] own liberty and financial interests before and during Petitioner's trial and [the attorney's]

---

[1] We decline to consider as unnecessary whether Christopher's claim may be appropriately considered under the framework of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and its progeny, where prejudice may be presumed.

knowledge of this uncertainty that gives rise to the actual conflict in this case."). Even absent this conflict, Christopher has sufficiently alleged deficient performance: he alleged both that his attorney failed to review or inform him of the evidence in his case and that he was told not to worry because "the government's case was weak and conspiracy was difficult to prove." (R. 2530-1, Decl., PageID # 18601). The failure to review salient evidence with a client or to offer meaningful advice as to the likelihood of conviction at trial are both grounds for finding ineffective assistance. *See Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) ("A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available."). For the aforementioned reasons, Christopher may have satisfied the first prong of the *Strickland* inquiry.

We next turn to whether the facts as alleged support a finding of prejudice. They do. Christopher averred that he would have pleaded guilty had he understood the strength of the case against him. "Although some circuits have held that a defendant must support his own assertion that he would have accepted the offer with additional objective evidence, we in this circuit have declined to adopt such a requirement." *Griffin*, 330 F.3d at 737. Moreover, the substantial difference between Christopher's actual sentence and the range of sentences available under the plea he was offered is "strong evidence of a reasonable probability" that he would have accepted the agreement were it not for his attorney's deficient counsel. *Smith*, 348 F.3d at 552. The government's contention—that Christopher's claim is foreclosed because he continued to protest his innocence at trial—has previously been rejected by this Court. *See id.* Christopher has

asserted that he would have accepted the plea and, under these circumstances, that is enough if his allegations are shown to be truthful.

The final inquiry is whether the district court was required to hold an evidentiary hearing before denying Christopher's claim. *Valentine v. United States*, 488 F.3d 325, 331 (6th Cir. 2007). We review the district court's denial of a hearing for an abuse of discretion. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003). At the outset, we recognize that "a full blown evidentiary hearing" is not required in every instance. *Smith*, 348 F.3d at 550 (internal quotation marks omitted). However, a petitioner is due some form of hearing suited to the circumstances, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). This qualification is a useful, but narrow exception to the default rule that a petitioner is due a hearing once he has stated a viable claim. *See Valentine*, 488 F.3d at 333 ("The burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light." (internal quotation marks omitted)). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotation marks omitted). Furthermore, a district judge "may rely on his or her recollections of the trial" in denying the motion. *Id.*

Christopher has satisfied his burden. The government points to a status conference where the incriminating phone calls were mentioned as proof that Christopher was aware of the evidence against him. We are unpersuaded by this line of argument. The government places too much significance on this fleeting reference in a single status conference. Even accepting that Christopher was fully aware that the government's evidence included allegedly incriminating

phone calls, there is no inconsistency with the notion that he was unaware of those phone calls' content or legal import. We are also not persuaded by the fact that Christopher's attorney acknowledged on the record that Christopher was aware of but rejected the plea offer. We previously held in *Smith* that an evidentiary hearing was required, despite the attorney's sworn affidavit attesting that the petitioner "never considered a plea [even] though it was discussed." 348 F.3d at 550. The natural purpose of the hearing, in that instance, was to determine the content of those discussions—mainly, whether or not the attorney offered meaningful counsel, in order to allow the defendant to make an informed judgment with respect to his pleading options. The government's position is weaker here than it was in *Smith*—there is no attorney affidavit suggesting that Christopher was "disgust[ed]" by the idea of taking a plea, and Christopher's allegations included—*in addition* to the failure to offer meaningful advice—his attorney's drug use. *Id.* at 549. Christopher averred that his attorney advised him, "the government's case was weak and conspiracy is hard to prove." To state the obvious, it is both rational and reasonable for a client to rely on the advice offered by his or her legal counsel. The constitutional guarantee to effective counsel anticipates and safeguards this reliance.

We recognize that the district judge may be familiar with the parties and is in the best position to gauge a petitioner's credibility. However, without the benefit of the district court's reasons for denying the motion, we are left with only the record and Christopher's declaration for our consideration. Christopher's burden for obtaining a hearing was light, and he met that burden because the record did not "conclusively show" that he was entitled to no relief. *Valentine*, 488 F.3d at 332.

**CONCLUSION**

We find that the district court abused its discretion by dismissing Christopher's petition without a hearing. The judgment of the district court is therefore **REVERSED** and **REMANDED** for further proceedings.